IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00661-STV

OHIO AMBULANCE SOLUTIONS LLC,

    Plaintiff,

v.

AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
d/b/a AMERICAN MEDICAL RESPONSE,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendant American Medical Response Ambulance Service, Inc.'s Motion to Dismiss (the "Motion") [#23]. The Motion is before the Court on the Parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##20; 21] This Court has carefully considered the Motion and related briefing, the case file and the applicable case law, as well as oral argument conducted on February 9, 2023 [#31]. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.   FACTUAL BACKGROUND[1]

Defendant is the Federal Emergency Management Agency's ("FEMA's") prime contractor for ground ambulance, air ambulance, paratransit services and non-ambulance EMS personnel that supplements federal and military response to natural disasters, acts of terrorism, and other public health emergencies.  [#13, ¶ 1]  Defendant contracts with various subcontractors in order to provide FEMA with these emergency medical services.  [*Id.* at ¶ 2]  Plaintiff provides ambulance, paramedic, and other medical services.  [*Id.* at ¶ 3]

On April 6, 2020, Plaintiff and Defendant entered into the Agreement for Plaintiff to be one of Defendant's FEMA subcontractors.  [*Id.* at ¶¶ 4, 15; *see also* #26-1]  Pursuant to the Agreement, Defendant was to pay Plaintiff $190.01 per hour for an advanced life support ambulance and its crew, with three crews available for deployment.  [#26-1 at 7]  Section 3 of the Agreement provides:

> Term and Termination.  The Term of this Agreement is five (5) years from the Effective Date and shall automatically renew for successive one-year periods, unless otherwise terminated in accordance with the terms herein.

---

[1] The facts are drawn from the well-pleaded allegations in Plaintiff's Second Amended Complaint (the "Complaint") [#13].  For purposes of Defendant's Rule 12(b)(6) challenge, the Court must accept these allegations as true.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). The facts are also drawn from the AMR/FEMA Federal EMS Network Subcontract Agreement (the "Agreement") [#26-1], entered into by Plaintiff and Defendant on April 6, 2020, and referenced extensively in the Complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference"); *see also* [#13, ¶ 15 (incorporating the Agreement by reference)].  When considering Defendant's Rule 12(b)(1) challenge, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If the facts upon which subject matter jurisdiction depends are challenged, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id*.

> [Defendant] shall have the right to terminate this Agreement in the event that [Plaintiff] is in material breach of or default under any provision of this Agreement upon immediate written notice. Either Party shall have the right to terminate this Subcontract, without cause, by providing sixty (60) days written notice to the other Party. [Defendant] shall have the right to terminate the Agreement immediately if the FEMA Contract is terminated.

[#13, ¶ 16; *see also* #26-1 at 2]

On August 29, 2021, Defendant requested that Plaintiff deploy a squad to Mississippi to assist with Hurricane Ida relief efforts. [*Id.* at ¶¶ 21-22] Plaintiff selected Squad 219, a squad consisting of Dan Breneiser, Louie Belluomini, and K9-Star ("Star"), a service dog that accompanies Mr. Belluomini due to his post-traumatic stress disorder resulting from his experience in the United States Army. [*Id.* at ¶¶ 23-25] Prior to arriving in Mississippi, Squad 219 informed Ninette Seibert, Defendant's Disaster Response Network Manager, and Anna Mire, Defendant's Compliance Officer, that Star would accompany Mr. Belluomini. [*Id.* at ¶ 28] Neither Ms. Seibert nor Ms. Mire expressed any concerns about Star accompanying Mr. Belluomini. [*Id.* at ¶ 29]

When Squad 219 arrived in Mississippi, Defendant treated Squad 219 with disdain. [*Id.* at ¶ 30] Shortly after Squad 219's arrival to the staging area in Jackson, Mississippi, Ms. Seibert abruptly and unexpectedly cancelled Squad 219's deployment, stating that Squad 219 could not deploy with Star and ordered them to leave immediately. [*Id.* at ¶ 31] Defendant then physically escorted Squad 219 off of the staging area and did not permit Plaintiff to send a medic to replace Mr. Belluomini. [*Id.* at ¶ 32]

Shortly thereafter, Defendant terminated the Agreement. [*Id.* at ¶ 33] Defendant provided neither written notice nor justification for the termination, and Plaintiff only learned of the termination when it checked Defendant's online portal, which had been

updated to show that the Agreement was terminated. [*Id.* at ¶¶ 34-36] At the time of the termination, Plaintiff had been in compliance with the terms of the Agreement. [*Id.* at ¶¶ 17-18]

Plaintiff initiated this action on March 16, 2022. The operative Complaint brings four causes of action: (1) breach of contract [*id.* at ¶¶ 37-48], (2) breach of the implied covenant of good faith and fair dealing [*id.* at ¶¶ 49-56], (3) declaratory judgment [*id.* at ¶¶ 57-61], and (4) an alternative claim for promissory estoppel [*id.* at ¶¶ 62-71]. On July 8, 2022, Defendant filed the instant Motion seeking dismissal of Plaintiff's Complaint. [#23] Plaintiff has responded to the Motion [#26], and Defendant has replied [#27].

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."

*Casanova*, 595 F.3d at 1124 (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III. ANALYSIS

Defendant makes two arguments in support of its Motion. First, Defendant argues that the Court lacks subject matter jurisdiction because Plaintiff cannot meet the amount in controversy requirement for diversity jurisdiction. [#23 at 11-15] Second, Defendant argues that Plaintiff has failed to state a claim for relief. [*Id.* at 15-23] The Court addresses each argument in turn.

#### A. Subject Matter Jurisdiction

Defendant argues that the Court lacks subject matter jurisdiction because Plaintiff cannot meet the amount in controversy requirement for diversity jurisdiction. [#23 at 11-15] Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." Because Plaintiff initiated this action in federal court, "unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (citing *St. Paul Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938)). "It must appear to a legal

certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* "The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount." *Id.* "A plaintiff's allegations in the complaint alone can be sufficient to make this showing." *Id.* Nonetheless, "[a]lthough allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *Id.* (quotation omitted).

Defendant argues that the Agreement allowed Defendant to terminate by providing sixty-day notice and that Plaintiff has not alleged that it lost profits in the sixty days after the alleged termination without notice. [#23 at 12-13] The Court disagrees. Pursuant to the Agreement, Defendant was to pay $190.01 per hour for an advanced life support ambulance and its crew. [#26-1 at 7] Deploying a single crew, for 24 hours per day, for sixty days would result in payments of $273,614.40. And the Agreement provided that Plaintiff would have three crews available for deployment. [*Id.*] On these facts, the Court cannot conclude with "legal certainty that the claim is really for less than the jurisdictional amount." *Adams Reliance Standard*, 225 F.3d at 1183.

Defendant argues that the minimum amount has not been adequately pled because it was "under no obligation to order any services from Plaintiff during the entire five-year term of the Agreement [and therefore] Plaintiff cannot allege that [Defendant] would have ordered any services from Plaintiff during the 60 days following the alleged termination." [#23 at 12 (emphasis and citation omitted)] Once again, the Court disagrees. In *Acoustic Marketing Research, Inc. v. Technics, LLC*, the Colorado

Supreme Court addressed a similar situation. 198 P.3d 96 (Colo. 2008). There, Sonora Medical Systems, Inc. ("Sonora") engaged Technics, Inc. ("Technics") to help Sonora develop and commercialize a re-coat and re-label ("RCRL") process for refurbishing transesophageal echocardiology probes ("TEE-probes"). *Id.* at 97. Sonora agreed to pay Technics an hourly consulting fee over a period of nine months, as well as royalties on the first 3,000 TEE-probes re-coated and re-labeled. *Id.* Pursuant to the contract, Sonora could abandon the RCRL process at any time, provided it made a total payment of $15,000. *Id.* Consistent with the terms of the contract, Technics consulted with Sonora for nine months, after which Sonora conducted additional development work and implemented an in-house RCRL process. *Id.* Sonora refused to pay royalties to Technics, however, claiming that Technics did not contribute to the particular RCRL process being implemented. *Id.* Technics sued Sonora for breach of contract, and a jury awarded $419,000 in damages for past-due royalties, future royalties, and the closure payment, an amount that the Colorado Court of Appeals reduced to $324,000. *Id.* at 97-98.

On appeal to the Colorado Supreme Court, Sonora argued that: (1) any award of damages for lost royalties is speculative as a matter of law, and (2) "under the specific facts of th[at] case, where the royalty agreement permitted Sonora to cease RCRL production—and hence royalty-generating activity—at any time, an award of future royalty damages [wa]s speculative as a matter of law." *Id.* at 98. The Colorado Supreme Court disagreed with both arguments. *Id.* With respect to Sonora's second argument, the Colorado Supreme Court concluded that it was the "jury's task . . . to determine, as a factual matter, whether Sonora was reasonably certain to continue

RCRL production, and to compute a fair approximation of any future damages which would accrue as a result." *Id.* at 99. Because the "jury weighed th[e] evidence and found for Technics, apparently concluding that Sonora was reasonably certain to continue the RCRL process until it had refurbished at least 3,000 probes," and that decision was "a case for the fact finder," the Colorado Supreme Court concluded that "the jury's determination ha[d] adequate record support and sh[ould] not be disturbed on appeal." *Id.* at 100.

So too here, a jury, after hearing the evidence presented, may reasonably conclude that Defendant, prior to its breach, had intended to employ Squad 219 (and perhaps two other squads as permitted by the Agreement) during the entire sixty day period. As explained above, such an intent would result in damages exceeding the $75,000 threshold. At a minimum, given the Colorado Supreme Court's holding in *Acoustic Marketing Research*, the Court cannot conclude with "legal certainty that the claim is really for less than the jurisdictional amount." *Adams Reliance Standard*, 225 F.3d at 1183.

In its reply, Defendant submits a declaration from Ms. Seibert. [#27-1] According to this declaration, the period of performance for Squad 219's Mississippi deployment was seven days, or 168 hours. [*Id.* at ¶ 6] Thus—at the rate of $190.01 per hour, and considering travel time—Ms. Seibert concludes that "[Plaintiff] could not have earned more than $37,336.97 . . . with one qualified [ambulance crew]." [*Id.* at ¶ 12] This argument ignores the fact, however, that the Agreement permitted up to three crews for deployment. [#26-1 at 7] And at this stage of the proceedings, the Court cannot conclude to a "legal certainty" that Plaintiff cannot ultimately prove that

8

Defendant had intended to deploy additional crews at some point during the sixty-day period, or that Defendant would not have extended Squad 219's Mississippi deployment or retained Squad 219's services for different deployments within the sixty-day period. As a result, the Court concludes that Plaintiff has adequately pled the requisite jurisdictional amount. Accordingly, to the extent the Motion seeks to dismiss the Complaint for lack of jurisdiction, it is DENIED.

### B.  Sufficiency of the Allegations

Alternatively, Defendant moves to dismiss the Complaint for failure to state a claim.[2]  [#23 at 15-24]  The Court addresses each claim in turn.

### 1.  Breach of Contract

Plaintiff's first claim alleges breach of the Agreement.  [#13, ¶¶ 37-48]  Under Colorado Law,[3] a breach of contract claim requires:  (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  Defendant argues that Plaintiff cannot prove damages because Defendant was not under any obligation to order services during either the five-year term or the sixty-day notice period.  [#23 at 16]  But as previously articulated, under Colorado law it is the "jury's task . . . to determine, as a factual matter, whether [Defendant] was reasonably certain to continue [using

---

[2] The Motion also seeks to dismiss Plaintiff's request for attorneys' fees.  [#23, 22-23]  The Court concludes that a determination of whether Plaintiff is entitled to attorneys' fees is premature, and therefore DENIES the Motion to the extent it seeks a ruling on attorneys' fees.

[3] The Agreement provides that it "shall be interpreted and enforced in accordance with the laws of the State of Colorado."  [#26-1 at 4]  Neither party has argued for the application of a different state's law.

9

Plaintiff's services], and to compute a fair approximation of any future damages which would accrue as a result." *Acoustic Mktg. Rsch.,* 198 P.3d at 99.  Accordingly, the Court concludes that Plaintiff has plausibly alleged a breach of contract claim, and the Motion is DENIED to the extent it seeks to dismiss Claim One.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second claim alleges breach of the implied covenant of good faith and fair dealing.  [#13, ¶¶ 49-56]  "Under Colorado law, every contract contains an implied duty of good faith and fair dealing."  *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006).  "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'"  *Id.* (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)).  "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'"  *Id.* (quoting *Amoco*, 908 P.2d at 498).  "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation."  *Id.* (quoting *Amoco*, 908 P.2d at 498).  Nonetheless, the duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained."  *Amoco*, 908 P.2d at 498.

Defendant argues that the implied covenant of good faith does not apply here because the Agreement provides the manner for parties to terminate and permits either party to terminate the contract without cause.  [#23 at 16-17]  The Court agrees.  "Colorado state and federal courts have held that the implied covenant is inapplicable to a clause expressly permitting one party to terminate the contract without cause." *Eagle*

*Sys. & Servs., Inc. v. Exelis Sys. Corp.*, No. 1:12-cv-00303-RBJ, 2015 WL 59315, at *3 (D. Colo. Jan. 2, 2015) (collecting cases). This is so because "the implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate the contract." *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at * 6 (D. Colo. Nov. 30, 2007) (collecting cases); *see also Amoco*, 908 P.2d at 498 (The duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained.").

Here, the Agreement contained an express manner in which it could be terminated. Specifically, either party had the right to terminate the Agreement, "without cause," by providing sixty days written notice to the other party. [#13, ¶ 16; *see also* #26-1 at 2] Thus, so long as the terminating party complied with the sixty-day notice provision, it could terminate the Agreement for any reason. Attaching an implied covenant of good faith to that termination decision would invalidate the express termination provision of the Agreement, in violation of Colorado law. *Amoco*, 908 P.2d at 498; *Eagle Sys. & Servs.*, 2015 WL 59315, at *3; *Rocky Mountain Chocolate Factory,* 2007 WL 4268962, at * 6.

In its response [#26 at 13], Plaintiff quotes *Beal Corporation Liquidating Trust v. Valleylab, Inc.* for the proposition that "[w]hile the proper termination of an at-will contract does not state a claim upon which relief can be granted, an allegation of improper termination of such an agreement does allege an actionable claim." 927 F. Supp. 1350, 1364 (D. Colo. 1996) (citing *Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128 (Colo. App. 1985)). The Colorado Court of Appeals case that *Beal* cites

for this proposition, however, held the opposite. In *Friedman & Son*, Friedman & Son, Inc. ("Friedman") entered into a contract with Safeway Stores, Inc. ("Safeway") whereby Safeway agreed to sell and Friedman agreed to purchase Safeway's scrap paper. 712 P.2d at 1129. The contract was for a two-year term, but provided: "In the event Safeway installs a high density baling system, Safeway has the option to cancel the contract upon a 60-day written notice." *Id.* Safeway purchased a baling system and gave Friedman written notice that it would be terminating the contract as of January 2, 1983. *Id.* at 1129-30. Safeway, however, began shipping scrap paper to its new baler by December 20, 1982. *Id.* at 1130. The Colorado Court of Appeals held that Safeway breached the termination provision of the contract by shipping scrap paper to the new baler before the date given in the written notice. *Id.* at 1130. Nonetheless, the Colorado Court of Appeals held that the district court did not err in refusing to allow Friedman to amend its complaint to add a breach of the duty of good faith and fair dealing because an "allegation of unfair dealing in the termination of an at-will contract does not state a valid claim for which relief can be granted under Colorado law." *Id.* at 1131.

   As in *Friedman & Son*, the Agreement here contains an express provision that allowed Defendant to terminate the Agreement after providing sixty-day notice. If, as alleged, Defendant breached that notice requirement, then Plaintiff has a claim for breach of contract. Plaintiff does not, however, have a claim for breach of the implied warranty of good faith and fair dealing.

   In its response, Plaintiff also asserts that Defendant perhaps "did not technically terminate the Agreement," but simply stopped ordering services from Plaintiff following

12

Squad 219's Mississippi deployment. [#26 at 13] Should that be the case, Plaintiff argues that "[the Agreement] left [Defendant] with the contractual discretion to determine how often and when [Defendant] would request [Plaintiff's] services. [Plaintiff], in the 'weaker position,' was forced to rely on [Defendant's] good faith in using that discretion." [*Id.* at 14] Plaintiff may be correct, but the Complaint cannot be fairly read to assert breach of the implied covenant of good faith in Defendant's exercise of its discretion in employing Plaintiff's services while the Agreement was in existence. Rather, the Complaint only alleges that Defendant breached the implied covenant of good faith by terminating the Agreement. [#13, ¶¶ 53-54 (stating only that Defendant breached the covenant by terminating the Agreement without notice)] Because, such a termination decision does not violate the covenant of good faith and fair dealing, Claim Two is DISMISSED. Nonetheless, because it may be possible for Plaintiff to assert such a claim with better pleading, Claim Two is DISMISSED WITHOUT PREJUDICE. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 3. Declaratory Judgment

Plaintiff's third claim seeks a declaration that Defendant breached the Agreement when it terminated the Agreement without proper notice. [#13, ¶¶ 57-61] Defendant maintains that the declaratory judgment action is improper because it only seeks a declaration concerning past acts. [#23 at 17-18] The Court agrees.

A "declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past

act." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008); *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (holding the "legal interest" in the dispute "must be more than simply the satisfaction of a declaration that a person was wronged").  In its response, Plaintiff argues that it is not seeking a declaration regarding a past act because "[Defendant] has taken the position that it did not technically terminate the Agreement" and "[i]f that is the case, [Plaintiff] may still be subject to numerous requirements under the Agreement." [#26, 15]  But this assertion of potential uncertainty regarding Plaintiff's status under the Agreement contradicts the Complaint's allegations, which clearly, and solely, assert that Defendant terminated the Agreement. [*See, e.g.*, #13, ¶¶ 21 ("[Defendant] improperly terminated the Agreement without any notice whatsoever."); 33 ("In, or around, September of 2021, . . . [Defendant] terminated the Agreement."); 34 ("[Defendant's] online portal . . . had been updated to show that [the] Agreement was terminated."); 53 ("[Defendant] acted contrary to the Agreement's common purpose and the parties' reasonable expectations when it terminated the Agreement without notice."); 54 ("AMR breached its duty of good faith and fair dealing when it terminated the Agreement without notice.")]  And the relief sought through Claim Three is a declaration that "[Defendant] breached the above-described Agreement when it terminated the Agreement, with or without cause, and without proper written notice." [*Id.* at ¶ 61]  Because Plaintiff's declaratory judgment claim as currently pled seeks a declaration concerning a past action, it "would serve no purpose here and thus [] is not available."  *Rinaldo v. Colorado*, No. 17-cv-01582-GPG, 2018 WL 10207986, at *3 (D. Colo. Jan. 29, 2018).  Accordingly, Claim Three is DISMISSED WITHOUT PREJUDICE.

### 4. Promissory Estoppel

Plaintiff's fourth claim asserts an alternative claim for promissory estoppel. [#13, ¶¶ 62-71] "To recover on a promissory estoppel theory, a party must establish that (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forebearance by the promise; (3) the promisee in fact reasonably relied on the promise to [her] detriment; and (4) the promise must be enforced to prevent injustice." *Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014) (applying Colorado law). The alleged promise must "be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 620 (Colo. App. 1997).

Defendant argues that Plaintiff has failed to adequately allege a promise that could support a claim for promissory estoppel. [#23 at 18-22] The Court disagrees. At a minimum, Plaintiff has alleged that, on August 29, 2021, Defendant promised Plaintiff an opportunity to deploy in Jackson, Mississippi. [#13, ¶¶ 22-23, 64] Many of the terms of the relationship between Plaintiff and Defendant are set forth in the Agreement, and at this stage of the proceedings a party may plead promissory estoppel in the alternative to a breach of contract claim. *Carthon v. Balfour Senior Care, LLC*, No. 21-cv-00007-MEH, 2021 WL 2954685, at *3 (D. Colo. June 16, 2021); *BBG Holding Corp. v. K Capital*, LLC, No. 20-cv-03268-MEH, 2021 WL 147085, at *3 (D. Colo. Jan. 15, 2021).[4] Thus, to the extent the Motion seeks to dismiss Claim Four, it is DENIED.

---

[4] Defendant further argues, in its reply brief only, that Plaintiff does not adequately allege detrimental reliance on Defendant's promise regarding the Mississippi deployment. [#27 at 10] This argument was neither made in the original Motion nor

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss [#23].  Specifically,

(1) The Motion is **GRANTED** to the extent it seeks to dismiss Claims Two and Three and those Claims are **DISMISSED WITHOUT PREJUDICE**;

(2) The Motion is **DENIED** to the extent it seeks to dismiss Claims One and Four and to the extent it seeks to dismiss Plaintiff's request for attorneys' fees;

(3) Plaintiff has 21 days from the date of this Order to file a Third Amended Complaint consistent with this Order; and

(4) A status conference is set for April 18, at 9:00 a.m.

DATED:  February 24, 2023

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

made in response to an argument made in Plaintiff's Response, and it is therefore waived.  *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-CV-01445-PAB-SKC, 2023 WL 2140104, at *3 (D. Colo. Feb. 21, 2023); *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).  But even considering the argument, the Court disagrees.  Plaintiff alleges that, in response to Defendant's promise, it expected and planned for a deployment and sent a crew to Mississippi in order to perform emergency response services.  [#13, ¶¶ 23, 68]  This reliance was to Plaintiff's detriment, as Plaintiff in fact was not permitted to undertake its deployment and the crew was ordered to leave shortly after its arrival.  [*Id.* at ¶¶ 30-31]