IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00661-STV

OHIO AMBULANCE SOLUTIONS LLC,

    Plaintiff,

v.

AMERICAN MEDICAL RESPONSE AMBULANCE SERVICE, INC.,
d/b/a AMERICAN MEDICAL RESPONSE,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendant American Medical Response Ambulance Service, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint (the "Motion") [#41]. The Motion is before the Court on the Parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##20; 21] This Court has carefully considered the Motion and related briefing, the case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

1

I.  **FACTUAL BACKGROUND**[1]

Defendant is the Federal Emergency Management Agency's ("FEMA's") prime contractor for ground ambulance, air ambulance, paratransit services and non-ambulance EMS personnel that supplements federal and military response to natural disasters, acts of terrorism, and other public health emergencies. [#34, ¶ 1] Defendant contracts with various subcontractors in order to provide FEMA with these emergency medical services. [*Id.* at ¶ 2] Plaintiff provides ambulance, paramedic, and other medical services. [*Id.* at ¶ 3]

On April 6, 2020, Plaintiff and Defendant entered into the Agreement for Plaintiff to be one of Defendant's FEMA subcontractors. [*Id.* at ¶¶ 4, 16; *see also* #34-1] Pursuant to the Agreement, Defendant was to pay Plaintiff $190.01 per hour for an advanced life support ambulance and its crew, with three crews available for deployment. [#34-1 at 7] Section 3 of the Agreement provides:

> Term and Termination.  The Term of this Agreement is five (5) years from the Effective Date and shall automatically renew for successive one-year

---

[1] The facts are drawn from the well-pleaded allegations in Plaintiff's Third Amended Complaint (the "Complaint") [#34].  For purposes of Defendant's Rule 12(b)(6) challenge, the Court must accept these allegations as true. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). The facts are also drawn from the AMR/FEMA Federal EMS Network Subcontract Agreement (the "Agreement") [#34-1], entered into by Plaintiff and Defendant on April 6, 2020, and both attached to the Complaint and referenced extensively in the Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference"); *see also* [#34, ¶ 16 (incorporating the Agreement by reference)].  To the extent Defendant is making a Rule 12(b)(1) challenge, the Court may consider matters outside the pleadings without transforming the Motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If the facts upon which subject matter jurisdiction depends are challenged, a court "may not presume the truthfulness of the complaint's factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

> periods, unless otherwise terminated in accordance with the terms herein. [Defendant] shall have the right to terminate this Agreement in the event that [Plaintiff] is in material breach of or default under any provision of this Agreement upon immediate written notice. Either Party shall have the right to terminate this Subcontract, without cause, by providing sixty (60) days written notice to the other Party. [Defendant] shall have the right to terminate the Agreement immediately if the FEMA Contract is terminated.

[#34, ¶ 32; *see also* #34-1 at 2] "[Plaintiff], in reliance on [Defendant's] promises, made numerous necessary preparations in order to be ready to deploy a squad in connection with emergency relief efforts." [#34, ¶ 17]

On August 29, 2021, Defendant requested that Plaintiff deploy a squad to Mississippi to assist with Hurricane Ida relief efforts. [*Id.* at ¶ 18] Plaintiff selected Squad 219, a squad consisting of Dan Breneiser, Louie Belluomini, and K9-Star ("Star"), a service dog that accompanies Mr. Belluomini due to his post-traumatic stress disorder resulting from his experience in the United States Army. [*Id.* at ¶¶ 20-22] Mr. Belluomini and Star have been on deployments for, among other things, COVID-19 detection and scent locating, and have received national recognition for their personal and professional achievements. [*Id.* at ¶¶ 23-24] "In reasonable reliance on [Defendant's] promises, [Plaintiff] expended significant resources in order to prepare for deployment." [*Id.* at ¶ 19]

Prior to arriving in Mississippi, Squad 219 informed Ninette Seibert, Defendant's Disaster Response Network Manager, and Anna Mire, Defendant's Compliance Officer, that Star would accompany Mr. Belluomini. [*Id.* at ¶ 25] Neither Ms. Seibert nor Ms. Mire expressed any concerns about Star accompanying Mr. Belluomini. [*Id.* at ¶ 26] When Squad 219 arrived in Mississippi, however, Defendant treated Squad 219 with disdain. [*Id.* at ¶ 27] Shortly after Squad 219's arrival to the staging area in Jackson,

Mississippi, Ms. Seibert abruptly and unexpectedly cancelled Squad 219's deployment, stating that Squad 219 could not deploy with Star and ordering them to leave immediately. [*Id.* at ¶ 28] Defendant then physically escorted Squad 219 off of the staging area and did not permit Plaintiff to send a medic to replace Mr. Belluomini. [*Id.* at ¶ 29]

Shortly thereafter, Defendant stopped ordering services from Plaintiff. [*Id.* at ¶ 30] Plaintiff checked Defendant's online portal when attempting to submit reimbursement requests and learned that the Agreement was "terminated." [*Id.* at ¶ 31] Defendant provided neither written notice nor justification for the termination. [*Id.* at ¶¶ 35-38] At the time of the termination, Plaintiff had been in compliance with the terms of the Agreement. [*Id.* at ¶¶ 33-34]

Plaintiff initiated this action on March 16, 2022. [#1] The operative Complaint brings four causes of action: (1) breach of contract [#34, ¶¶ 39-50]; (2) breach of the implied covenant of good faith and fair dealing [*id.* at ¶¶ 51-58]; (3) declaratory judgment [*id.* at ¶¶ 59-63]; and (4) an alternative claim for promissory estoppel [*id.* at ¶¶ 64-73].[2] On March 31, 2023, Defendant filed the instant Motion seeking dismissal of Plaintiff's Complaint. [#41] Plaintiff has responded to the Motion [#43] and Defendant has replied [#45].

---

[2] Plaintiff's Second Amended Complaint had brought the same four claims. [#13] In response to an earlier motion to dismiss filed by Defendant [#23] the Court issued an Order that dismissed Claims Two and Three but permitted Plaintiff to file a Third Amended Complaint to attempt to cure the deficiencies identified in the Court's Order [#32].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova*, 595 F.3d at 1124 (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.     ANALYSIS

Defendant makes three arguments in support of its Motion.  First, Defendant argues that Plaintiff's implied covenant of good faith claim directly conflicts with the terms of the Agreement and fails to allege bad faith.  [#41 at 5-8]  Second, Defendant argues that Plaintiff's declaratory relief claim impermissibly seeks a declaration concerning a past act.  [*Id.* at 8-9]  Finally, Defendant asks the Court to reconsider its earlier decision that Plaintiff had plausibly alleged lost future profits.  [*Id.* at 9-12]  Because this last argument arguably goes to this Court's subject matter jurisdiction,[3] the Court begins with Defendant's request that the Court reconsider its prior decision, then turns to Defendant's other two arguments.

#### A.     Defendant's Request that the Court Reconsider Its Prior Decision

Defendant had previously argued that the Court lacks subject matter jurisdiction because Plaintiff cannot meet the amount in controversy requirement for diversity jurisdiction where the Agreement allowed Defendant to terminate by providing sixty-days' notice and Plaintiff had not plausibly alleged that it lost profits in the sixty days after the alleged termination without notice.  [#23 at 12-13]  Relatedly, Defendant argued that Plaintiff cannot prove damages on its breach of contract claim because Defendant was not under any obligation to order services during either the five-year term or the sixty-day notice period.  [*Id.* at 16]  In its previous Order, the Court disagreed

---

[3] Plaintiff premises subject matter jurisdiction upon 28 U.S.C. § 1332, which requires diverse parties and an amount in controversy exceeding the sum of $75,000.  [#34, ¶ 13]  Defendant had previously argued that the Court lacked subject matter jurisdiction because Plaintiff cannot plausibly meet the amount in controversy requirement.  [#23 at 11-15]  The Court will thus assume that the Motion's request that the Court reconsider its previous ruling also challenges this Court's subject matter jurisdiction.

with both of these arguments. [#32 at 6-10] Defendant now asks this Court to reconsider that decision. [#41 at 9-12]

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). "A motion for reconsideration is an extreme remedy to be granted in rare circumstances." *Stoney v. Cingular Wireless L.L.C.*, No. 06-cv-02003-WYD-KLM, 2009 WL 1394260, at *1 (D. Colo. May 19, 2009) (quoting *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995)). "The Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed." *Seabron v. Am. Family Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. July 24, 2012) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Accordingly, "[a]bsent extraordinary circumstances, arguments that could have been raised in the original briefing on the dispute in question may not be made in a motion for reconsideration." *Id.* (citing *Servants of Paraclete*, 204 F.3d at 1012).

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. "A motion to reconsider . . . should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quotation omitted). Defendant does not argue an intervening change in the law or new evidence, but instead argues that "the Court misapprehended governing law." [#41 at 10]

7

In its prior Order, the Court relied upon *Acoustic Marketing Research, Inc. v. Technics, LLC*, 198 P.3d 96 (Colo. 2008), in concluding that Plaintiff had plausibly alleged future lost profits. [#32 at 6-10]  The Court explained:

> [*In Acoustic Marketing Research*], Sonora Medical Systems, Inc. ("Sonora") engaged Technics, Inc. ("Technics") to help Sonora develop and commercialize a re-coat and re-label ("RCRL") process for refurbishing transesophageal echocardiology probes ("TEE-probes"). [198 P.3d] at 97.  Sonora agreed to pay Technics an hourly consulting fee over a period of nine months, as well as royalties on the first 3,000 TEE-probes re-coated and re-labeled.  *Id.*  Pursuant to the contract, Sonora could abandon the RCRL process at any time, provided it made a total payment of $15,000.  *Id.*  Consistent with the terms of the contract, Technics consulted with Sonora for nine months, after which Sonora conducted additional development work and implemented an in-house RCRL process.  *Id.*  Sonora refused to pay royalties to Technics, however, claiming that Technics did not contribute to the particular RCRL process being implemented.  *Id.*  Technics sued Sonora for breach of contract, and a jury awarded $419,000 in damages for past-due royalties, future royalties, and the closure payment, an amount that the Colorado Court of Appeals reduced to $324,000.  *Id.* at 97-98.
>
> On appeal to the Colorado Supreme Court, Sonora argued that: (1) any award of damages for lost royalties is speculative as a matter of law, and (2) "under the specific facts of th[at] case, where the royalty agreement permitted Sonora to cease RCRL production—and hence royalty-generating activity—at any time, an award of future royalty damages [wa]s speculative as a matter of law."  *Id.* at 98.  The Colorado Supreme Court disagreed with both arguments.  *Id.*  With respect to Sonora's second argument, the Colorado Supreme Court concluded that it was the "jury's task . . . to determine, as a factual matter, whether Sonora was reasonably certain to continue RCRL production, and to compute a fair approximation of any future damages which would  accrue as a result."  *Id.* at 99.  Because the "jury weighed th[e] evidence and found for Technics, apparently concluding that Sonora was reasonably certain to continue the RCRL process until it had refurbished at least 3,000 probes," and that decision was "a case for the fact finder," the Colorado Supreme Court concluded that "the jury's determination ha[d] adequate record support and sh[ould] not be disturbed on appeal."  *Id.* at 100.
>
> So too here, a jury, after hearing the evidence presented, may reasonably conclude that Defendant, prior to its breach, had intended to employ Squad 219 (and perhaps two other squads as permitted by the Agreement) during the entire sixty day period.

8

[#32 at 6-8] As a result, the Court concluded that Plaintiff has adequately pled future lost profits and therefore both satisfied the jurisdictional monetary threshold and had plausibly pled a breach of contract claim. [*Id.* at 8-10]

Defendant argues that the Court "misapprehended governing law by effectively holding that *Acoustic* relieved Plaintiff of its obligation to plausibly allege facts demonstrating lost future profits." [#41 at 10] The Court disagrees and once again concludes that Plaintiff has plausibly alleged "that Defendant, prior to its breach, had intended to employ Squad 219 (and perhaps two other squads as permitted by the Agreement) during the entire sixty day period." [#32 at 8] Indeed, Squad 219 had already been deployed, at Defendant's request, with the reasonable expectation that its services would be used in Jackson, Mississippi. [#34, ¶¶ 18-19, 27, 49-50] The Court finds no error in this decision and certainly cannot conclude that its decision "clearly demonstrates manifest error of law." *Nat'l Bus. Brokers, Ltd.*, 115 F. Supp. 2d at 1256 (quotation omitted). Accordingly, Defendant's request that the Court reconsider its prior decision is DENIED.

### B. Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Plaintiff's second claim alleges breach of the implied covenant of good faith and fair dealing. [#34, ¶¶ 51-58] "Under Colorado law, every contract contains an implied duty of good faith and fair dealing." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'" *Id.* (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "The duty of good faith and fair

9

dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id.* (quoting *Amoco*, 908 P.2d at 498). "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *Id.* (quoting *Amoco*, 908 P.2d at 498). Nonetheless, the duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained." *Amoco*, 908 P.2d at 498.

Defendant argues that the implied covenant of good faith does not apply here because the Agreement provides the manner for parties to terminate and permits either party to terminate the contract without cause. [##41 at 5-6; 44 at 2-3] "Colorado state and federal courts have held that the implied covenant is inapplicable to a clause expressly permitting one party to terminate the contract without cause." *Eagle Sys. & Servs., Inc. v. Exelis Sys. Corp.*, No. 1:12-cv-00303-RBJ, 2015 WL 59315, at *3 (D. Colo. Jan. 2, 2015) (collecting cases). This is so because "the implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate the contract." *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-WYD-BNB, 2007 WL 4268962, at * 6 (D. Colo. Nov. 30, 2007) (collecting cases); *see also Amoco*, 908 P.2d at 498 (The duty of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained.").

Here, the Agreement contained an express manner in which it could be terminated. Specifically, either party had the right to terminate the Agreement, "without cause," by providing sixty days written notice to the other party. [#34, ¶ 32; *see also*

#34-1 at 2]  Thus, so long as the terminating party complied with the sixty-day notice provision, it could terminate the Agreement for any reason.  Attaching an implied covenant of good faith to that termination decision would invalidate the express termination provision of the Agreement, in violation of Colorado law.  *Amoco*, 908 P.2d at 498; *Eagle Sys. & Servs.*, 2015 WL 59315, at *3; *Rocky Mountain Chocolate Factory*, 2007 WL 4268962, at * 6.

In its response, Plaintiff argues that "[Defendant] breached its obligation of good faith and fair dealing by using its 'contractual discretion' to, in bad faith, stop employing [Plaintiff's] services, effectively removing [Plaintiff] from [its] subcontractor network, without releasing [Plaintiff] from its contractual obligations."  [#43 at 9]  But Plaintiff fails to explain how it remains bound by the Agreement after the Agreement has been terminated.[4]  And to the extent Plaintiff is attempting to argue that the Agreement has not been terminated but that Defendant has simply chosen to stop using Plaintiff's services, this argument runs contrary to the allegations in the Complaint; the Complaint expressly states that "[Defendant] terminated the Agreement in, or around, September of 2021."  [#34, ¶ 43; *see also id.* at ¶¶ 44 ("At the time of termination . . ."); 45 ("At the time of termination . . ."); 46 ("[Defendant] did not provide written notice to [Plaintiff]

---

[4] In conclusory fashion, Plaintiff alleges that it "*may* be subject to numerous requirements under the Agreement" and then lists a "contractual obligation" to ensure that personnel and resources are not committed to state and local emergency response plans and to maintain high levels of insurance.  [#34, ¶ 61 (emphasis added)]  But the Agreement specifically provides that the insurance obligations will be "maintain[ed] during the Term of this Agreement" and the "Term of the Agreement" is listed as five years from the Effective Date "unless otherwise terminated in accordance with the terms herein."  [#34-1 at 2-3]  And while the Agreement provides that "[Defendant] shall assure that personnel, vehicles or other resources provided are not committed to state and local emergency response plans" [*id.* at 2], any logical reading of that provision implies that this commitment only extends through the Term of the Agreement.

11

pursuant to the plain terms of the Agreement before it terminated the Agreement."); 47 ("[Defendant] did not provide [Plaintiff] with sixty (60) days' written notice pursuant to the plain terms of the Agreement before it terminated the Agreement.")]  And Plaintiff may not effectively amend its Complaint by adding new facts in its response to the Motion. *See Mattson v. Napolitano*, No. 09-cv-02024-PAB-BNB, 2010 WL 11553697, at *2 (D. Colo. Sept. 15, 2010); *see also Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) ("Plaintiffs cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss.").  Thus, Plaintiff has failed to plausibly plead an implied covenant of good faith claim independent of the express termination provision of the Agreement.  Accordingly, the Motion is GRANTED to the extent it seeks to dismiss Plaintiff's implied covenant of good faith and fair dealing claim.

### C.   Plaintiff's Declaratory Judgment Claim

Plaintiff's third claim seeks a declaration that Defendant breached the Agreement when it terminated the Agreement without proper notice.  [#34, ¶¶ 59-63]  Defendant maintains that the declaratory judgment action is improper because it only seeks a declaration concerning past acts.  [#41 at 8-9]  The Court agrees.

A "declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008); *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (holding the "legal interest" in the dispute "must be more than simply the satisfaction of a declaration that a person was wronged").  In its response, Plaintiff argues that it "asks the Court to issue a declaration that [Defendant's] conduct in terminating the Agreement without notice and/or ceasing

to deploy [Plaintiff]—constituted a breach of the Agreement." [#43 at 12] Plaintiff argues that this claim "may be necessary . . . because, without this declaration, ambiguity exists as to the status of the Agreement and the parties' obligations thereunder." [*Id.* at 12-13] But, this assertion of potential uncertainty regarding the status of the Agreement contradicts the Complaint's allegations, which clearly, and solely, assert that Defendant terminated the Agreement. [*See*, *e.g.*, #34, ¶¶ 44-47]

Plaintiff also argues that "if the [A]greement was never properly terminated, [Plaintiff] may still be under [certain] contractual obligation[s] . . . [and that] [i]f the Court declares that the Agreement was breached by [Defendant] even if it was not technically terminated, the legal rights and obligations of the parties will have been defined." [#43 at 13] And according to Plaintiff, its "breach of contract claim does not resolve this legal dispute." [*Id.*] But Plaintiff's breach of contract claim does resolve the question of whether Defendant properly terminated the Agreement. And Plaintiff's declaratory judgment action seeks nothing further—it does not, for example, seek a declaration that Plaintiff has no further future obligations under the Agreement. [#34, ¶ 63 ("[Plaintiff] asks the Court to declare that [Defendant] breached the above-described Agreement when it terminated the Agreement, with or without cause, and without proper written notice and/or stopped ordering [Plaintiff's] services without cause, justification, or notice.")] Thus, because Plaintiff's declaratory judgment claim as currently pled seeks a declaration concerning a past action, it "would serve no purpose here and thus [] is not available." *Rinaldo v. Colorado*, No. 17-cv-01582-GPG, 2018 WL 10207986, at *3 (D. Colo. Jan. 29, 2018).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss [#41].  Specifically,

(1) The Motion is **GRANTED** to the extent it seeks to dismiss Claims Two and Three and those Claims are **DISMISSED**;

(2) The Motion is **DENIED** to the extent it seeks to dismiss Claims One and Four;

(3) A scheduling conference is set for November 8, 2023, at 11:00 a.m.  The proposed scheduling order shall be submitted to the Court no later than November 1, 2023, at 5:00 p.m.

DATED:  September 28, 2023                                  BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge